# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA BARBOSA and PATRICIA AGUILLERA BARRIOS, on behalf of themselves and all similarly situated individuals, | Case No. 1:11-cv-00275-SKO |
| Plaintiffs, | **ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | (Doc. 62) |
| CARGILL MEAT SOLUTIONS CORP., and DOES 1-50, | **ORDER GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS** |
| Defendants. | (Doc. 63) |

## I.   INTRODUCTION

On May 6, 2013, Plaintiffs Christina Barbosa ("Barbosa") and Patricia Aguilera Barrios ("Barrios," collectively "Plaintiffs") and Defendant Cargill Meat Solutions Corporation ("Defendant") filed a joint motion requesting final approval of a class action settlement.  (Doc. 62.)  Plaintiffs also filed a motion for an award of attorneys' fees and costs and enhancement awards for the named Plaintiffs as Class Representatives.  (Doc. 63.)  No objection to either motion was submitted by any member of the class ("Class Member").  A final fairness hearing was conducted by the Court on June 5, 2013.  Alexander Wheeler, Esq., of R. Rex Parris Law Firm and Philip Downey, Esq., of the Downey Law Firm, LLC, appeared on behalf of Plaintiffs, Jeremy J. Glenn, Esq., and Joseph E.

1

Tilson, Esq., of Meckler, Bulger, Tilson, Marick, & Pearson, LLP, appeared on behalf of Defendant. Dennis Wilson, Esq., former counsel for Plaintiffs, also appeared.  No Class Member appeared at the hearing.  Plaintiffs' counsel indicated that additional claims had been submitted by Class Members since the Class Administrator's declaration was filed; a supplemental declaration of the Class Administrator was filed on June 6, 2013.  (Doc. 69.)

For the reasons set forth below, the Court GRANTS FINAL APPROVAL of the parties' class action settlement, (2) GRANTS an award of attorneys' fees and costs, and (3) GRANTS enhancement awards to Plaintiffs as Class Representatives.

## II.   BACKGROUND

On February 16, 2011, Plaintiffs filed a putative collective class action complaint against Defendant seeking to recover against Defendant for violations of the California Labor Code as well as for engaging in unfair competition and violating California's Unfair Competition Law.  Plaintiffs' operative pleading, the First Amended Complaint, was filed on February 22, 2011, and alleges claims for (1) violation of California's Unfair Competition Law, Business and Professions Code § 17200, et seq.; (2) violation of the California Labor Code §§ 510 – failure to pay overtime; (3) violation of the California Labor Code §§ 201-203 – unpaid wages and waiting time penalties; (4) violation of the California Labor Code §§ 226.7, 512 – failure to provide meal and rest periods; and (5) violation of the California Labor Code §§ 1174 *et seq.* – failure to maintain required records.  (Doc. 7, First Amended Complaint ("FAC").)

The class consists of individuals who are currently and formerly employed by Defendant at its meat processing facilities in Fresno, California.  (FAC, ¶ 12.)  The complaint alleges that, pursuant to state and federal regulations and Defendant's own internal policies and procedures, Plaintiffs and Class Members are required to wear special personal protective equipment and gear for protection and sanitary reasons.  All of Defendant's production employees are required to wear the special protective equipment when working.  During their unpaid 30-minute lunch breaks, Plaintiffs and Class Members must search for an open hook on which to hang their equipment; they must then remove their equipment and hang it before proceeding off the processing floor.  Prior to the conclusion of the 30-minute break, Plaintiffs and Class Members must return to their work stations several minutes before

the line starts so that they have sufficient time to re-don their protective equipment and have their work station prepared.  Employees must also sanitize their hands during lunch and prior to resuming work.  All of these activities are to be performed by the employees during their 30-minute unpaid meal breaks.  (FAC ¶¶ 14-15.)

Defendant filed an answer to the FAC on March 22, 2011, and on November 14, 2011, a scheduling order was issued and discovery was opened.  (Docs. 11, 26.)  In late 2012, the parties participated in two full-day mediation sessions with Michael Loeb, Esq., an experienced JAMS mediator in San Francisco, California.  (Doc. 62, 7:21-22.)  As a result of mediation, the parties reached a class-wide settlement of the action (Doc. 62, 7:22-25), and on November 15, 2012, a Notice of Settlement was filed (Doc. 44).

On December 12, 2012, the parties filed a joint motion for preliminary approval of the class settlement.  (Doc. 47.)  On January 13, 2013, the Court granted preliminary approval of the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement. (Doc. 53.)  On May 6, 2013, the parties filed a Joint Motion for Final Approval of Class Action Settlement and Plaintiffs filed a motion for attorneys' fees and costs and a motion for an enhancement award for the named Plaintiffs.  (Doc. 63.)  No opposition was filed.  A hearing was held on June 5, 2013, and Plaintiffs indicated that additional claims had been received and the settlement administrator would file an updated declaration.  On June 6, 2013, Kristin L. Dahl filed a supplemental declaration regarding the claims administration process.  (Doc. 69.)

### III.   THE PARTIES' SETTLEMENT

On November 15, 2012, the parties filed a Notice of Settlement; the terms of the parties' "Stipulation of Class Settlement and Release Between Plaintiffs and Defendant" ("Settlement Agreement") is summarized below.  (*See* Doc. 47-1, Exhibit A.)

### A.   The Composition of the Settlement Class

The Settlement Agreement provides for the certification, for settlement purposes only, of a class comprised of all current and former hourly production and support employees of Defendant's meat packing facility in Fresno, California, between February 2, 2009, and the date of preliminary

approval of the Settlement Agreement (January 16, 2013) who do not timely opt out of the Settlement. (Doc. 47-1, ¶ 7(r).)

**B.     The Material Terms of the Settlement Agreement**

   **1.     The Class Settlement Amount**

   Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Gross Settlement Amount in the sum of $1,290,000 (the "Settlement Amount").  The Gross Settlement Amount includes (1) a $10,000 service fee award fund set aside for the two Representative Plaintiffs; (2) the payment of attorneys' fees to Class Counsel not to exceed one-third of the Gross Settlement Amount; (3) Class Counsel's costs and expenses in the amount of $16,196.21 for the R. Rex Parris Law Firm and $9,420.09 for the Downey Law Firm; (4) $25,500 for the Claims Administrator's estimated costs; and (5) an amount set aside for the payment of any agreed and allowed late claims or unanticipated expenses, which shall not exceed $10,000.  The remainder of the Settlement Amount, after deduction of these payments constitutes the "Net Settlement Amount" and will be used to pay the Class Members.  (Doc. 47-1, ¶ 7(k).)  To the extent the $10,000 set aside for payment of any agreed and allowed late claims or unanticipated expenses is not exhausted, any unexhausted amount will be donated to the designated *cy pres* beneficiary, The United Way of Fresno County.

   **2.     Settlement Awards**

   The parties agreed that the Claims Administrator would use personnel and payroll records provided by Defendant to determine the amount that each Class Member is eligible to receive upon submission of a valid and timely Claim form.  Based on the number of weeks each Class Member actually worked for Defendant during the eligibility period, the Claims Administrator will calculate an award for each individual.  Each Class Member's number of settlement shares will be divided by the total settlement shares and that ratio will be multiplied by the Net Settlement Amount to determine the amount of the monetary award that each Class Member will receive.  The parties may seek review of the Claims Administrator's calculations.  One-third of each Settlement Award shall be treated as back wages subject to W-2 reporting and normal payroll taxes and withholding will be deducted by the Claims Administrator pursuant to state and federal law.  The remaining two-thirds of each Settlement Award shall be treated by all parties as non-wage penalties and liquidated damages, and will be

reported on an IRS Form 1099 and shall not be subject to FICA and FUTA withholding taxes.  (Doc. 47-1, ¶ 14.)

**C.   The Scope of the Release in the Settlement Agreement**

The parties' Settlement Agreement sets forth the following release by the Class Members and the Representative Plaintiffs:

19.   <u>Release by Eligible Class Members</u>.   It is hereby agreed, by and between the Representative Plaintiffs, Settlement Class Members and Defendant, through their respective counsel of record, and subject to approval of the Court, in consideration of the benefits inuring to the Parties thereto, and without admission of any liability or wrongdoing whatsoever by Defendant, that upon entry of the Order and Final Judgment:

a.      Representative Plaintiffs shall be deemed to have released and forever discharged the Released Parties from any and all Released Claims, as defined above in paragraph 7(o),[1] whether known or unknown.  In addition, Representative Plaintiffs hereby release and forever discharge the Released Parties from any and all existing claims, liabilities, debts, compensation, damages, losses, costs, expenses, and attorneys' fees, of any and every kind, nature or character, known or unknown, suspected or unsuspected, actual or potential, absolute or contingent, pending or anticipated, which arise out of, are based upon, are by reason of, relate to, or in any way involve Representative Plaintiffs' employment with [Defendant], including the termination thereof, including, but not limited to, those arising under any federal, state, provincial or local law, regulation or ordinance, contract, quasi-contract, the common law, public policy, or any constitution, such as, without limitation, the California Fair Employment and Housing Act, Government Code sections 12940 *et seq.,* Family Medical Leave Act, California Family Rights Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Older Workers Benefit Protection Act, Age Discrimination in Employment Act, Consolidated Omnibus Budget Reconciliation Act of 1985, Employee Retirement Income Security Act of 1974, Civil Code section 51 *et seq.,*

---

[1]   Paragraph 7(o) defines "Released Claims" to mean "any and all claims asserted on behalf of hourly production employees in the First Amended Complaint, whether known or unknown, against the Released Parties by or on behalf of such Settlement Class Members or successors or assigns of any of them (whether directly, indirectly, representatively, derivatively or in any other capacity), accruing any time prior to the entry of the Preliminary Approval Order and arising under the California Labor Code including but not limited to §§201-203, 204, 210, 218-218.6, 226, 226.3, 226.7, 510, 558, 1174, 1174.5, 1194, 1199, *et seq.*; the California Business and Professions Code §§ 17200 *et seq.*, California Code of Regulations, Title 8, § 11080, subs. 3, 4, 7, 9-13, 20 (California Industrial Welfare Commission Wage Orders No. 4-1998, 4-2000, 4-2001, 8-1998, 8-2000, and 8-2001), and all claims for penalties that could have been brought based on the violations alleged in the Complaint; violations of Business & Professions Code § 17200 *et seq.* based on the foregoing alleged violations; and all claims for attorneys' fees and/or costs.  Released Claims also means any claims based on the same set of facts underlying the claims asserted in this Class Action including, but not limited to, claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*  Settlement Class Members who do not respond to the Notice (*i.e.,* neither opt out of the class nor file a claim form) are bound by the terms of the Settlement Agreement, with the exception that Settlement Class Members who do not respond to the Notice (*i.e.,* neither opt out of the class nor file a claim form) do not release any claims under the FLSA."  (Doc. 47-1, ¶ 7(o).)

Wage Orders of the Industrial Welfare Commission, Fair Labor Standards Act and California Labor Code, including Labor Code Section 132a, arising, accruing, or occurring at any time up to and including the date on which they execute this Agreement. Representative Plaintiffs acknowledge and agree that this Settlement Agreement includes their release of claims for **disputed** wages pursuant to Labor Code Section 206.5. Representative Plaintiffs do **not** provide the release in exchange for payment of any undisputed wages owing to them.

REPRESENTATIVE PLAINTIFFS ADDITIONALLY EXPRESSLY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

NOTWITHSTANDING THE PROVISION OF SECTION 1542, AND FOR THE PURPOSE OF IMPLEMENTING A COMPLETE RELEASE AND DISCHARGE, REPRESENTATIVE PLAINTIFFS EXPRESSLY ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT IS INTENDED TO INCLUDE IN ITS EFFECT, WITHOUT LIMITATION, CLAIMS AND CAUSES OF ACTION WHICH THEY DO NOT KNOW OF OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION HEREOF AND THAT THIS AGREEMENT CONTEMPLATES THE EXTINGUISHMENT OF ALL SUCH CLAIMS AND CAUSES OF ACTION.

b.      Each Settlement Class Member shall be bound by all terms of the Settlement Agreement and the Order Finally Approving Settlement Agreement and Final Judgment and shall be deemed to have jointly and severally discharged the Released Parties from any and all Released Claims, whether known or unknown, accruing any time prior to the date of preliminary approval of the Settlement Agreement, unless he or she timely opts out of the Settlement Agreement, with the exception that Settlement Class Members who do not respond to the Notice (*i.e.*, neither opt out of the class nor file a claim form) do not release any claims under the FLSA.

WITH RESPECT TO THE RELEASED CLAIMS, AS DEFINED IN PARAGRAPH 7(O), ELIGIBLE CLASS MEMBERS AND THE REPRESENTATIVE PLAINTIFFS, BARBOSA AND AGUILERA BARRIOS, ADDITIONALLY EXPRESSLY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

NOTWITHSTANDING THE PROVISION OF SECTION 1542, AND FOR THE PURPOSE OF IMPLEMENTING A COMPLETE RELEASE AND DISCHARGE, ELIGIBLE CLASS MEMBERS EXPRESSLY ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT IS INTENDED TO INCLUDE IN ITS EFFECT CLAIMS RELEASED, AS DEFINED IN PARAGRAPH 7(O), WHICH THEY DO NOT KNOW OF OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION HEREOF AND THAT THIS AGREEMENT CONTEMPLATES EXTINGUISHING ALL OF SUCH CLAIMS.

       c.    <u>Release Language on Settlement Checks</u>.  Defendant shall be entitled to include the following release language on the back of each settlement check:

My signature or negotiation of this check constitutes a full and complete release of Cargill Meat Solutions Corp., its parent, affiliated and related entities, their predecessors, and their officers and employees, by me for any and all claims I agreed to settle ("Released Claims") by submitting a claim form to participate in the settlement of *Barbosa, et al. v. Cargill Meat Solutions Corp.*, pending in the United States District Court for the Eastern District of California, Case No. 1:11-cv-00275-SKO, up to and including the date of preliminary Court approval of the settlement, as well as my acknowledgment that I accept this check as payment in full for all claims alleged on my behalf in that lawsuit.

(Doc. 47-1, ¶ 19.)

**D.**    **Notice to the Class Members**

The procedures for giving notice to the Class Members, as set forth in the parties' Settlement Agreement (*see* Doc. 47-1, ¶ 24) and ordered in the Court's Preliminary Approval Order (Doc. 53), have been carried out by the Settlement Administrator, Dahl Administration, LLC ("Dahl").  (Doc. 63-3, Dahl Decl. ¶¶ 4-9.)

On January 30, 2013, Defendant provided Dahl the names of 1,837 hourly employees of Cargill Meat Solutions Corporation who worked at its meat-packing facility in Fresno, California, between February 2, 2009, and January 16, 2013.  (Doc. 63-3, Dahl Decl., ¶ 4.)   Dahl processed the Class List through the National Change of Address database, which provides updated addresses for individuals who have moved within the last four years and who filed a change of address card with the U.S. Postal Service.  (Doc. 63-3, Dahl Decl., ¶ 6.)

Dahl prepared Notice and Claim for Packets for each Class Member containing the Court-approved Notice in English and Spanish, a customized Claim form in English and Spanish with the

Class Member's eligible workweeks and estimated settlement award amount, and a postage pre-paid reply envelope.  (Doc. 63-3, Dahl Decl., ¶ 7.)  The Notice summarized the Settlement Agreement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement Agreement received final approval, and advised Class Members how to submit claims for payment, opt out of the Settlement, or object to the Settlement.  (*See* Doc. 63-3, Exhibit A.)  The Notice was approved by the Court in the January 16, 2013, Preliminary Approval Order.  (Doc. 53, ¶¶ 5-7.)

On February 13, 2013, Notice and Claim Form packets were mailed via first class mail to 1,837 Class Members.  (Doc. 63-3, Dahl Decl., ¶ 8.)  As of April 15, 2013, Dahl received 158 undeliverable Notices, nine of which were returned with forwarding addresses and they were promptly re-mailed.  (Doc. 63-3, Dahl Decl., ¶ 10.)  The remaining 149 Notices were sent to a professional address location service for address tracking.  (Doc. 63-3, Dahl Decl., ¶ 10.)  After trace results were received, 100 Notice and Claim Form packets were re-mailed to updated addresses, and 49 Notice and Claim Form packets could not be re-mailed because no new address was found.  (Doc. 63-3, Dahl Decl., ¶ 10.)  Seven Notice and Claim Form packets were returned as undeliverable after the filing deadline or were returned from a traced address and were not re-mailed.  (Doc. 63-3, Dahl Decl., ¶ 10.)

Dahl established a toll-free settlement helpline to assist Class Members with questions about the Notice and Claim Form packet and settlement.  (Doc. 63-3, Dahl Decl., ¶ 11.)  The helpline provided support in English and Spanish, and as of April 29, 2013, Dahl had received 72 calls from Class Members.  (Doc. 63-3, Dahl Decl., ¶ 11.)

**E.       Response of the Class**

As of April 26, 2013, Dahl received 1,060 Claim Forms, representing a 57.70% filing rate.  Of these, 1,051 were valid and timely.  As of April 29, 2013, one valid, timely request for exclusion had been filed, and no late requests for exclusion were filed.  (Doc. 63-3, Dahl Decl., ¶ 12.)  Dahl received no objections to the settlement.  (Doc. 63-3, Dahl Decl., ¶ 13.)

On June 6, 2013, Kristin Dahl filed a supplemental declaration to describe the receipt and processing of late Claims Forms.  (Doc. 69, Dahl Decl.)  As of June 5, 2013, Dahl had received a total

8

of 1,065 Claim Forms, representing a 57.97% filing rate.  (Doc. 69, Dahl Decl., ¶ 5.)  Of these, 1053 were valid and timely, but twelve claims were received after the April 15, 2013, filing deadline.  (Doc. 69, Dahl Decl., ¶ 5.)  The parties agreed to accept all twelve late Claim Forms.  (Doc. 69, Dahl Decl., ¶ 5.)

Based upon the Net Settlement Amount, estimated to be $785,347.26, payments to the 1,053 Class Members who filed valid and timely Claim Forms will total $633,814.40 or 80.70% of the Net Settlement Amount.  (Doc. 69, Dahl Decl., ¶ 6.)  The maximum claim payment to Class Members who worked the entire eligibility period is $922.29, and the average claim payment is $601.91.  (Doc. 69, Dahl Decl., ¶ 6.)  Payments to the 12 Class Members who filed late Claim Forms total $5,199.57 or 0.66% of the Net Settlement Amount, and the average claim payment for the Late Claimants is estimated to be $433.29.  (Doc. 69, Dahl Decl., ¶ 7.)

**F.      Notice Pursuant to 28 U.S.C. § 1715**

Pursuant to 28 U.S.C. § 1715(b), "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal office, a notice of the proposed settlement."

Kristin Dahl provided a declaration with respect to the notice activities Dahl performed under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1715(a) and (b).  (Doc. 62-2.)  Ms. Dahl states that on February 5, 2013, Dahl mailed notice of the proposed settlement of this action via Certified Mail to the Attorneys General for California, Louisiana, Minnesota, Pennsylvania, Texas, and Wisconsin, and to the appropriate federal official, the Attorney General of the United States.  (Doc. 62-2, ¶ 4.)

## IV.      DISCUSSION

**A.      Final Approval of the Class-Action Settlement is Granted**

**1.      The Rule 23(a) Class-Certification Requirements Are Satisfied**

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements.  "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the

fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In confirming the propriety of class certification, courts assess the following prerequisites pursuant to Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

### a.    Numerosity

Numerosity requires that the class be so numerous that the joinder of individual class members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Across the Settlement Class, 1,837 Class Members were ultimately identified.  The number of Class Members in this case indicates that the numerosity factor has been satisfied.  *See, e.g., Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (indicating that class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), vacated on other grounds, 459 U.S. 810 (1982).

### b.    Commonality

Rule 23(a) also requires "questions of law or fact common to the class."  Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp.* ("*Chrysler Corp.*"), 150 F.3d 1011, 1019 (9th Cir. 1998).  In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  As clarified in *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

The Class Members' claims arising from Defendant's alleged uniform employment policies asserted here differ from those found insufficient to establish commonality in *Dukes*, 131 S. Ct. at

2554.  In *Dukes*, the purported commonality was a lack of common control over a business practice. *Id.* at 2554-55.  The Supreme Court determined that the "only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters."  *Id.* at 2554.  The Court noted that, "[o]n its face, of course that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices."  *Id.*  The Court concluded that there was no specific employment practice that tied all of the putative class members together and that "[m]erely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice."  *Id.* at 2556.

Here, there is no evidence before the Court that the pay practices alleged to violate the California Labor Code were applied inconsistently, such that the complained-of employment practices do not "touch and concern all members of the class."  *Id.* at 2557 n. 10 (internal citations omitted). Additionally, the parties have agreed for purposes of settlement only that commonality is satisfied here, where all of the Class Members were employed at the same Fresno, California, processing plant, by the same employer, and had similar job responsibilities.  (Doc. 62, 18:3-6.)  Moreover, the Class Members were subjected to the same employment policies and practices and were subject to the same allegedly improper compensation and break practices.  (Doc. 62, 18:6-8.)  Finally, the Class Members have the same general type of donning and doffing claims for regular and overtime compensation and they assert the same claims for violations of the California Labor Code provisions regarding meal and rest periods and wages, and other common state law claims.  (Doc. 62, 18:8-11.)  The commonality factor is sufficiently satisfied.

### c.    Typicality

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Typicality . . . is said . . . to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Armstrong*, 275 F.3d at 868.  Under the Rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Chrysler Corp.*, 150 F.3d at

11

1020.

Plaintiffs' claims are "co-extensive" with the other Class Members, as Plaintiffs and the absent Class Members were all Defendant's employees, working under the same pay practices and the same company-wide employment policies.  Plaintiffs and the Class Members seek relief for unpaid regular and overtime wages for Defendant's alleged failure to pay them for time spent preparing, donning and doffing, cleaning and sanitizing required work gear and equipment, among other things.  The Court finds that the typicality requirement is satisfied.

### d.    Adequacy of Representation

The final Rule 23(a) prerequisite, adequacy of representation, is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The satisfaction of constitutional due process concerns requires that absent class members be afforded adequate representation prior to an entry of judgment, which binds them.  *Chrysler Corp.*, 150 F.3d at 1020.  Determining the adequacy of representation requires consideration of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.*

The adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members, *e.g.*, obtaining payment for wages unlawfully withheld. Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' -- particularly because the named Plaintiffs have no separate and individual claims apart from the Class.

Moreover, here there are no allocation dilemmas among the Settlement Class similar to those observed as issues in *Amchen Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  In *Amchen*, the settlement agreement eliminated all present and future claims against asbestos manufacturers, and the class counsel was attempting to represent both groups of plaintiffs, i.e., those who had present claims and those who had future claims.  The conflict between the two groups of plaintiffs was that "the present plaintiffs had a clear interest in a settlement that maximized current funds, while future plaintiffs had a strong interest in preserving funds for their future needs and protecting the total fund against inflation."  *Chrysler Corp.*, 150 F.3d at 1020-21 (discussing *Amchen*, 521 U.S. 591 (1997)).

Here, the case does not involve sub-classes or classes with diverging interests with respect to allocation of the settlement funds in the same manner as *Amchen*.  The Court does not perceive any conflicts of interest between Plaintiffs, Class Counsel, and other Class Members.

In considering the adequacy requirement, the Court also evaluates whether Plaintiffs and Class Counsel will pursue the Class' claims with vigor.  The Ninth Circuit has held that, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Chrysler Corp*., 150 F.3d at 1021.  There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.  (Doc. 63-2, Downey Decl., ¶ 3; Doc. 52, Wheeler Decl., Exhibit A.)  Further, this is not a case where the Class Members will receive no monetary distribution while the Class Counsel are rewarded amply.  *Chrysler Corp*., 150 F.3d at 1021.

### e.    Conclusion

As initially determined in the Court's preliminary approval order (Doc. 53) and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.[2]

### 2.    The Rule 23(b)(3) Requirements are Satisfied

In addition to meeting the requirements of Rule 23(a), to be certified, a class must also meet at least one of the requirements of Rule 23(b).  The parties contend that, because all Class Members challenge the same alleged practices and seek recovery under the same laws, "an argument reasonably exists that common questions of liability predominate and for purposes of settlement the parties do agree that this standard has been met."  (Doc. 62, 20:3-6.)  Pursuant to Rule 23(b)(3), a class action may be maintained if:

> (3)    the court finds that the questions of law or fact common to class
>         members predominate over any questions affecting only individual

---

[2] Plaintiff submitted a supplemental statement addressing the U.S. Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (Mar. 27, 2013).  Plaintiffs assert that *Behrend* is distinguishable from a wage-and-hour class action case such as this, and is not applicable to the certification of the settlement class at issue here.  Specifically, Plaintiffs assert that this case is susceptible to awarding damages on a classwide basis and unlike in *Behrend*, there is no damages model that improperly measures a broader pool of damages that conflict with a more narrowly defined class. (Doc. 65, 8-10.)  The Court finds that Plaintiffs have adequately distinguished *Behrend*, and its holding does not preclude certification of a settlement class under the circumstances of this case.

members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served best by settling their differences in a single action. Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements.  *Amchen*, 521 U.S. at 615.

### a.    Predominance

As the Rule 23(a)(3) analysis already considers the issue of commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues.  *Chrysler Corp.*, 150 F. 3d at 1022.  In other words, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchen*, 521 U.S. at 623. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F.3d 1266 (9th Cir. 2001).

The parties' Settlement Agreement sufficiently demonstrates that "[a] common nucleus of facts and potential legal remedies dominates this litigation."  *Chrysler Corp.*, 150 F.3d at 1022.  If Class Members were to sue individually, members of the same proposed settlement class would bring essentially the same claims against Defendant.  The central issues raised by the complaint concern policies and practices of Defendant which apply broadly to all the employees in the proposed settlement class.  Similar to *Wright v. Linkus Enterp., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009), this case derives from policies that allegedly required Class Members to work, for example, without

14

compensation for meal and rest periods.  The alleged company-wide and uniform employment policies comprise a common nucleus of facts for employees in the settlement class.   *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established"); *see also Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (common issues predominate meal break claims and claims for failure to provide itemized wage statements because these were class-wide policies, and litigation of these claims involve class-wide proof rather than individualized inquiry).  Moreover, the alleged violations of state law entitle the Class Members to the same legal remedies.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Chrysler Corp.*, 150 F.3d at 1022 (citations omitted).  Thus, despite minor factual differences among Class Members, such as the number of hours or weeks worked, common issues predominate.

### b.    Superiority

In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters relevant to the Court's determination that class action treatment is superior to other methods of adjudication.  Rule 23(b)(3)(A)-(D).  The first factor considers the interest of each member in "individually controlling the prosecution or defense of separate actions."  Rule 23(b)(3)(A).  This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation.  *See, e.g., In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), *abrogated on other grounds in Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored.  *Id.*

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The Court does not have any information that litigation concerning this controversy is currently being

pursued by or against the class members; thus, this factor is neutral.[3]

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Fed. R. Civ. P. 23(b)(3)(C)), and the fourth factor is "the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D)).  The fourth factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974).  In the context of settlement, however, the third and fourth factors are rendered moot and are irrelevant.  *See Amchem*, 521 U.S. at 620 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists."  *Valentino*, 97 F.3d at 1234.  The potential recovery by any individual plaintiff is relatively small and thus individual members of the class would likely be unwilling or unable to institute separate suits.  Further, the filing of individual suits by 1,837 separate plaintiffs would create an unnecessary burden on judicial resources.

In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

### c.      Conclusion

For the reasons set forth above, the Settlement Class meets the class-certification requirements of Rules 23(a) and 23(b)(3).

### 3.      The Proposed Settlement is Fair, Reasonable, and Adequate

Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2013).  Here, the

---

[3]   Another class action litigation concerning Cargill Meat Solutions Corporation was litigated in this district: *Salcido/Barbosa, et al. v. Cargill, et al.*, Case Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA.  That class, however, spanned a different time period – September 14, 2004, through January 27, 2009, and has resolved in a settlement.

parties' settlement was reached through the efforts of experienced counsel following two full-day mediation sessions conducted by a mediator who has experience handling wage and hour class action disputes.  Further, there was sufficient discovery conducted by experienced Class Counsel, and there were no objections and only one request for exclusion to the settlement.  The settlement is thus entitled to a presumption of fairness.

A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(c).  Such approval is required to ensure that any settlement reached is consistent with the plaintiff's fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co*., 751 F.2d 995, 996 (9th Cir. 1985).  The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement.  *Id*.  However, the court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.  *FDIC v. Alshuler (In re Imperial Corp. of Am.)*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996).  Therefore, the settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e), courts may consider factors including (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent of discovery completed and the stage of the proceedings; (6) whether the class has been fairly and adequately represented during the settlement negotiations; and (7) the reaction of the class to the proposed settlement.  *See Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Chrysler Corp*., 150 F.3d at 1026).

### a.    The Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery.  *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 964-65 (9th Cir. 2009).  In determining the probability of the plaintiff's success on the merits, there is no "particular formula by

which that outcome must be tested." *Id*. at 965.  Instead, the court's assessment is based on "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation and quotation marks omitted).  The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*.  Rather, the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery.  *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ").

The parties acknowledge in their joint motion for approval of the settlement that Defendant presented substantive evidence that its policies and practices during the limitations period applicable to this case complied with state and federal law with regard to payment of wages for all the time worked and that it provided compliant meal and rest periods under California law.  (Doc. 62, 12:21-24.)  This appears to have been factored into consideration of Plaintiffs' likelihood of recovery when the parties negotiated a settlement.  Plaintiffs also considered the costs and risks associated with class certification and trial.  The high risk, expense, and nature of a lengthy class action trial supported settlement at this stage of the litigation.

Therefore, although Plaintiffs maintain their strong belief in the underlying merits of the case, Class Counsel have acknowledged the weaknesses in the documentary evidence to support various aspects of Plaintiffs' claims and have considered the uncertainties surrounding proving the claims in a lengthy and complex jury trial in negotiating the settlement amount.  As a result, Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.  Accordingly, this factor weighs in favor of approval.

### b.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The risk, expense, complexity, and likely duration of further litigation are factors that consider "the probable costs, in both time and money, of continued litigation."  *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 254 (D.Del. 2002).  Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).  Moreover, settlement is encouraged in class actions where possible.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.").

In this case, there remained significant procedural hurdles for the putative class to confront, including certification of the class.  Avoiding such unnecessary expenditures of resources and time benefit all the parties and the Court.  Moreover, there were significant risks in continued litigation and no guarantee of recovery.  The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded – certain and prompt relief.  *See Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").  This factor weighs in favor of approval.

### c.   The Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral.  *See In re Veritas Software Corp. Sec. Litig*., No. 03-0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (*vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### d.   The Settlement Amount

"[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D. at 257-58.  Class Counsel negotiated a Gross Settlement Amount of $1,290,000.  The estimated Net Settlement available to the class is $785,347.26, and the 1,053 Class Members with valid claims will be paid a total of $633,814.40.  (Doc. 69, Suppl. Dahl Decl., ¶ 6.)  The maximum claim payment for Class Members who worked the entire eligibility period is $922.29, and the average claim payment is $601.91.  (Doc. 69, Suppl. Dahl Decl., ¶ 6.)  There were

also 12 Class Members who submitted late claims, which were accepted by the parties, and $5,199.57 will be paid to those Class Members in the aggregate; $433.29 is the estimated average claim payment for these 12 late claims.  (Doc. 69, Suppl. Dahl Decl., ¶ 7.)

Although a larger award was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations and quotation marks omitted). Moreover, the response of the Class has been positive.  No objections have been filed and only one class member opted-out of the settlement.  (Doc. 62-1, Dahl Decl., ¶ 12.)  In light of the claims at issue in this case and the size of the proposed settlement class, the Settlement Amount appears fair and reasonable and this factor weighs in favor of final approval.

### e.    The Extent of Discovery Completed and the Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528.  What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently."  Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2013).  Here, Plaintiffs' counsel expended significant time investigating the facts of the case, taking detailed in-person interviews of Class Members.  (Doc. 63-1, Wheeler Decl., ¶¶ 7-10.)  The R. Rex Parris Law Firm propounded written discovery on behalf of Plaintiffs and performed legal research during the time that discovery was open in this matter.  Class Counsel analyzed Defendant's meal and rest break records, which included review of 2,143 pages of documents produced by Defendant and other records obtained outside discovery by Class Counsel. (Doc. 63-1, Wheeler Decl., ¶ 7; Doc. 47-5, Downey Decl., ¶ 4.)  Class Counsel also took and defended four depositions.  (Doc. 63-1, Wheeler Decl., ¶ 2.)  Court finds that sufficient discovery has been conducted, and this factor weighs in favor of approval.

### f.    Whether the Class has been Fairly and Adequately Represented During the Settlement Negotiations

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  *See DIRECTV, Inc*., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

with the facts of the underlying litigation") (internal quotation marks and citations omitted).  This

reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned

than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the experience and view of Class Counsel weighs in favor of approving the Settlement.

Class Counsel understood the complex risks and benefits of any settlement and concluded that the

proposed Settlement was a reasonable recovery that confers a substantial benefit on the Class

Members.  (Doc. 47-5, Downey Decl., ¶ 8.)  Moreover, Class Counsel is experienced in this area of

law (Doc. 63-2, Downey Decl., ¶ 3; Doc. 67-1, Supplemental Wheeler Decl., ¶¶ 2-6), and the

Settlement was reached after two mediation sessions conducted by an experienced wage-and-hour

mediator (Doc. 47-5, Downey Decl., ¶6).  This factor weighs in favor of approval.

**g.      The Reaction of the Class to the Proposed Settlement**

Where a settlement agreement enjoys overwhelming support from the class, this lends weight

to a finding that the settlement agreement is fair, adequate, and reasonable.  *DIRECTV, Inc.*,

221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed

class action settlement raises a strong presumption that the terms of a proposed class settlement action

are favorable to the class members."); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D.

Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement

was adequate).

Here, Class Notices were mailed to 1,837 Class Members and only 1 Class Member has opted

out.  (Doc. 62-1, Dahl Decl., ¶¶ 12-13.)  Further, no objection to the Settlement Agreement was

received, and no Class Member appeared at the final approval hearing to state any objection.  The

response of the class was positive, and this weighs in favor of finding that the settlement is favorable

to the Class Members.

**4.      Conclusion**

In sum, as set forth above, the relevant factors weigh in favor of approving the parties'

Settlement Agreement.  It represents a substantial recovery that avoids the risks associated with

protracted litigation in a document-intensive wage-and-hour case.  The parties' Settlement Agreement

1    is found to be fair and reasonable and is hereby APPROVED.

2    **B.    Plaintiffs' Request for Attorneys' Fees is Approved**

3        Class counsel seeks attorneys' fees in the amount of one-third ($430,000) of the Gross

4    Settlement Fund established by the Settlement Agreement ($1,290,000).  (Doc. 63.)

5        Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may

6    award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'

7    agreement."  Fed. R. Civ. P. 23(h).  Courts have recognized the "common fund" or "common benefit"

8    doctrine, under which attorneys who create a common fund or benefit for a group of persons may be

9    awarded their fees and costs to be paid out of the fund.  *See Chrysler Corp.*, 150 F.3d at 1029.  "[A]

10   lawyer who recovers a common fund for the benefit of persons other than himself or his client is

11   entitled to a reasonable attorney's fee from the fund as a whole."  *Staton*, 327 F.3d at 972 (quoting

12   Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  Awarding a percentage of the common fund is

13   particularly appropriate "when each member of a certified class has an undisputed and mathematically

14   ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Id.* (quoting *Van*

15   *Gemert*, 444 U.S. at 478-79) (internal quotation marks omitted).

16       Here, the Settlement Agreement applies a formula pursuant to which each Class Member will

17   receive a mathematically ascertainable payment; application of the percentage of the common fund

18   doctrine is appropriate.  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20

19   percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark

20   percentage.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  The exact percentage awarded,

21   however, varies depending on the facts of the case, and "in most common fund cases, the award

22   exceeds that benchmark" percentage.  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL

23   248367, at *3 (N.D. Cal. Feb. 2, 2009); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377

24   (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

25       Federal courts utilize the percentage-of-the-fund approach, and use the lodestar as a "cross-

26   check" on reasonableness of the percentage.  As such, calculation of the lodestar amount may be used

27   as a cross-check to assess the reasonableness of the percentage award.  *See Garcia*, 2012 WL

28   5364575, at *8; *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, No. CV 06–

04149 MMM (Shx), 2011 WL 2648879 (E.D. Cal. June 30, 2011); *Fernandez v. Victoria Secret Stores*, No. CV 06–04149 MMM (Shx), 2008 WL 8150856 (C.D. Cal. July 21, 2008); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050-51 (9th Cir. 2002).

### 1.    The Percentage Requested is Fair and Reasonable

In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases.  *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).

### a.    The Results Achieved

The individual claims in this case concern Defendant's alleged practice of requiring hourly production and support employees at the Fresno, California, meat-packing facility to work certain amounts of time without compensation and Defendant's alleged failure to provide employees with the meal and rest periods to which they are entitled under California law.  These types of claims would not generally produce substantial individual damage awards.  As such, the recovery of $1,290,000 is a favorable result.  Overall, the Court finds that the results achieved are good, which is highlighted by the fact that there was no objection to the settlement amount or to the attorneys' fees requested.  *See DIRECTV*, 221 F.R.D. at 529.

### b.    The Risks Involved

There were significant risks involved in this litigation.  Plaintiffs assert that Defendant vehemently contested liability, and claimed throughout the litigation that it had proper procedures in place to pay workers for the time spent donning and doffing protective clothing and equipment.  (Doc. 63, 12:22-24.)  As there were no records of off-the-clock work, the case did not lend itself to easy proof of liability or damages.  (Doc. 63, 12:24-26.)  Also, many Class Members were transient, and most workers spoke Spanish as their sole language, which required additional time and effort by Class Counsel to communicate with them.  (Doc. 63, 12:27-13:1.)  Further, the action was taken on a contingency fee basis and, as such, Class Counsel invested time, effort, and money with no guarantee of recovery.  Like this case, where recovery is uncertain, an award of one-third of the common fund as

attorneys' fees has been found to be appropriate.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19, n. 14 (C.D. Cal. June 10, 2005) (discussing Ninth Circuit cases awarded attorney fees of one-third of the total recovery).

### c.    Skill Required and Quality of the Work Performed

The case required specialist skills to litigate the legal theories relating to wage and hour law and labor law at issue in the case.  Class Counsel are experienced class litigators, including in the area of employment class litigation.  Plaintiffs also note that "Defendant was represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases." (Doc. 63, 14:8-10.)  Plaintiffs assert that Class Counsel's ability to obtain the Settlement with such "formidable legal opposition" confirms the quality of Class Counsel's representation of Plaintiffs.  (Doc. 63, 14:11-13.)  The quality of opposing counsel is important in evaluating the quality of Class Counsel's work.  *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).   Moreover, this case was actively litigated and significant time was spent on discovery.  See generally *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement).  Overall, the specialized skill of Class Counsel in this area of the law was generally an asset to the Class Members and the quality of work performed was good.  This factor cuts in favor of approving the fee request.

### d.    The Contingent Nature of the Representation

Class Counsel litigated the case on a contingency fee basis, which necessarily presented considerable risk.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").  Class Counsel contend that they assumed a very real risk in taking this case on a contingency basis,

1    investing time, effort, and money in the action with no guarantee of recovery.  (Doc. 63, 12:2-20.)

2        In considering both the contingent nature of the work performed by Class Counsel as well as

3    the risk involved in the costs advanced, these factors support the fee award requested.  *See Graham v.*

4    *Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for

5    the same legal services paid as they are performed.  The contingent fee compensates the lawyer not

6    only for the legal services he renders but for the loan of those services.") (internal citations omitted).

7            **e.      Awards Made in Similar Cases**

8        Finally, the percentage award requested in this case is commensurate with percentage-of-the-

9    benefit awards made in other wage-and-hour actions in this district:

10           (1)    *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575

11                  (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent

12                  of the common fund);

13           (2)    *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662-OWW-MJS, Docket No. 59

14                  (E.D. Cal. June 30, 2011) (court approved attorneys' fees in the amount of 30 percent of

15                  the common fund);

16           (3)    *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour

17                  action putative class-action settlement where court approved award of attorneys' fees in

18                  the amount of 33.3 percent of the common fund);

19           (4)     *Benitez v. Wilbur*, No. 1:08-cv-01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15,

20                  2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);

21           (5)    *Chavez v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec.

22                  15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common

23                  fund);

24           (6)    *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at

25                  * 4 (E.D. Cal. Nov. 14, 2007) (class-action settlement where court approved attorneys'

26                  fees in the amount of 33 percent of common fund);

27           (7)    *Vasquez v. Jim Aartman, Inc.*, No. 1:02-cv-05624-AWI-LJO, Doc. No. 130 (class-

28                  action settlement where court approved attorneys' fees in the amount of 30 percent of

1    the settlement amount);

2    (8)    *Baganha v. Cal. Milk Transport*, No. 1:01-cv-05729-AWI-LJO, Doc. No. 147 (class-

3           action settlement where court approved attorneys' fees in the amount of 31.25 percent

4           of settlement amount); and

5    (9)    *Randall Willis et al. v. Cal. Western Transport and Earl Baron et al. v. Cal Western*

6           *Transport* (consolidated cases), No. 1:00-cv-05695-AWI-LJO (court approved

7           attorneys' fees in the amount of 33.3 percent of the settlement amount).

8           The Settlement Agreement's provision of $430,000 in attorneys' fees (33 percent of the total

9    settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-

10   hour cases in this district.

11          **f.    Conclusion**

12          Although Class Counsel's requested fees exceed the 25 percent benchmark under federal law,

13   the Court finds sufficient reasons to exceed that marker considering the risk of the litigation, the

14   contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-

15   and-hour cases.  As such, the requested 33 percent of the class recovery represents a reasonable fee

16   award and is approved.  *See Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971,

17   at * 3 (N.D. Cal. Aug. 9, 2010) (departure from benchmark warranted due to excellent results, reaction

18   of the class, the risks faced due to the uncertainty of California law in similar wage-and-hour cases).

19          **2.    Lodestar Cross-Check**

20          Courts frequently cross-check a percentage fee request with the lodestar analysis.  *See, e.g.,*

21   *Vizcaino*, 290 F.3d at 1050 (finding that "the lodestar may provide a useful perspective on the

22   reasonableness of a given percentage award"); *Bond*, 2011 WL 2648879, at *11 (finding that

23   "[c]alculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the

24   percentage award").

25          "In conducting a lodestar cross-check, the court must first determine the dollar value of the

26   proposed percentage-based fee award."  *In re Portal Software, Inc. Sec. Litig.* ("*Portal Software*"), No.

27   C-03-5138-VRW, 2007 WL 4171201, at *14 (N.D. Cal. Nov. 26, 2007).  The requested award here is

28   $430,000.00, which represents a requested fee of 33 percent of the $1,290,000 Settlement Amount.

The next step is to cross-check the proposed percentage fee against the lodestar.  *Id*.  "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)."  *In re HPL Tech., Inc. Sec. Litig*., 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).   The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness.  *Portal Software*, 2007 WL 4171201, at *14.   Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.  *See In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.")

### a.      Asserted Lodestar

The R. Rex Parris Law Firm attests that it expended 491.5 hours of work by various professionals within the firm, including both attorneys and support staff.  (Doc. 63-1, Wheeler Decl., ¶ 14.)   The R. Rex Parris Law Firm requests a "blended rate" of $500 per hour, regardless of who within the firm performed the work.  (Doc. 63-1, Wheeler Decl., ¶ 14.)  The R. Rex Parris Law Firm asserts that its lodestar totals $245,750 (491.5 x $500).   The Downey Law Firm, LLC, calculates its lodestar as follows:

| Professional | Hourly Rate | Hours Worked | Total Billed |
|---|---|---|---|
| Philip Downey | $550 | 301.6 | $165,880 |
| Dan Hunt | $400 | 38 | $ 15,215 |
| Legal Assistants | $50 | 139.60 | $  7,130 |
| **Totals:** | | **479.2** | **$188,225** |

Together, the asserted lodestar totals $433,975 ($245,750 + $188,225).

### b.      Hours Reasonably Expended

27

The Court finds the 970.7 (479.2 + 491.5) hours expended on the litigation to be reasonable in light of the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the Settlement Class, the mediation preparation required, and motion practice with respect to the Settlement Agreement.  The total number of hours expended in this action is commensurate with similar wage and hour class actions in this district.  *See Garcia*, 2012 WL 5364575, at *8 (approving 3,070.23 hours expended in reaching a settlement for 1,869 class members after "extensive" law and motion work, including dispositive motions); *Bond*, 2011 WL 2648879, at *12-*13 (reducing the number of hours requested from 1,929.94 by a 30 percent "haircut" (to 1,350.96) for a settlement of 553 class members after finding that the initial amount sought was not justified).  While the law and motion work in this action was not as extensive as in *Garcia*, the amount of hours billed is significantly less than the amount approved in *Garcia* and instead matches the amount ultimately approved in *Bond*, which included discovery involving significantly fewer class members than in this action.  The Court thus finds no reason to reduce the number of hours set forth in counsel's lodestar calculations.

### c.      Reasonable Hourly Rates

Class Counsel have submitted documentation of the hourly rates billed in this matter. Attorneys at the Downey Law Firm, LLC, located in Unionville, Pennsylvania, billed at rates ranging from $400 to $550 per hour.  The Downey Law Firm, LLC also billed $50 per hour for the work of "office staff."  (Doc. 63-2, Downey Decl., ¶ 8.)  The R. Rex Parris Law Firm seeks a "blended rate" of $500 per hour for work performed by all attorneys and staff.  (Doc. 67.)  In support of this "blended rate," a declaration was submitted by Alexander R. Wheeler stating that the billing rates for the attorneys from R. Rex Parris Law Firm who performed work on this case range from $350 to $900 per hour, and the paralegal and litigation assistants bill at a rate of $100 per hour.  (Doc. 67-1, Supplemental Wheeler Decl., ¶¶ 2-10.)

As recent cases have indicated, prevailing hourly rates in the Fresno division of the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience.  *See Garcia*, 2012 WL 5364575, at *9, *Bond*, 2011 WL 2648879, at *11-13.  In *Bond*, the court noted that "[b]ecause the lodestar is being used here

as a cross-check, the court may use a 'rough calculation of the lodestar.'" *Bond*, 2011 WL 2648879, at *12 (citing *Fernandez*, 2008 WL 8150856, at *9. The court in *Bond* determined that it was "appropriate to roughly haircut the lodestar" by 10 percent to bring the requested hourly rates within those prevalent within the Eastern District. Thus, for example, a requested hourly rate of $750 for a partner with more than 20 years of experience was adjusted to $675 per hour. A requested hourly rate of $290 for an associate with two years of experience was adjusted to $261 per hour. Additionally, the court found that the appropriate rate for legal assistants was $100 per hour. Similarly, in *Garcia*, while the court did not reduce the requested hourly rates, the maximum rate approved was $650 per hour, and many of the rates ranged from $125 to $400 per hour. *See Garcia*, 2012 WL 5364575, at *9.

Here, in relation to work performed by individuals at the R. Rex Parris firm, the hourly rate of $500 is a "blended rate." A blended rate, however, does not assist the Court in reaching an accurate lodestar calculation. Rather, the Court relies on the rates attested to by Mr. Wheeler in relation to the particular professional who performed work on the case. The hourly rates set forth in Mr. Wheeler's supplemental declaration are similar to those requested in *Bond* and, as such, are subject to a 20-percent "haircut" to account for the rates in the relevant community. Further, also based upon the rate approved in *Bond*, $100 per hour for legal assistants is reasonable. The adjustments are set forth as follows:

| Professional | Years of Experience | Hourly Rate | Hourly Rate Adjustment | Hours Worked | Total Billed |
|---|---|---|---|---|---|
| Rob Parris | 21 | $900 | $720 | 31.5 | $ 22,680 |
| Alexander R. Wheeler | 8 | $700 | $560 | 224.60 | $125,776 |
| Kitty Szeto | 5 | $500 | $400 | 116.20 | $ 46,480 |
| John M. Bickford | 2 | $350 | $280 | 60 | $ 16,800 |
| Legal Assistants | N/A | $100 | $100 | 59.2 | $ 5,920 |
| | | | | **Total:** | **$217,656** |

(Doc. 67-1, Supplemental Wheeler Decl.)

The adjusted hourly rates for work of the attorneys range from $280 to $720 per hour and account for the respective attorney's experience and position within the R. Rex Parris Law Firm. This

comports generally with the range of rates awarded in *Bond* and *Garcia*.

As it pertains to the Downey Law Firm, LLC, the requested hourly rates are commensurate with the rates awarded in *Bond* and *Garcia*, and do not warrant a reduction. The adjusted lodestar is $217,656 (R. Rex Parris Law Firm) and $188,225 (Downey Law Firm) for a total of $405,881.[4]

### d. Lodestar Multiplier

The amount of $430,000 requested by Class Counsel is greater than the lodestar of $405,881. However, adjustments to increase or decrease the lodestar amount are sometimes appropriate and justify the use of a "lodestar multiplier." *Clark v. City of L.A.*, 803 F.2d 987, 991 (9th Cir. 1986); *see also Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel*, 307 F.3d at 1008 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. *Fischel*, 307 F.3d at 1008; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp.*, 109 F.3d 602, 609 (9th Cir.1997); *Bond*, 2011 WL 2648879, at *13.

The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel*, 307 F.3d at 1008. Here, a multiplier of 1.06 is calculated by dividing $430,000 by $405,881. To determine whether the lodestar multiplier is reasonable, the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the

---

[4] Former counsel for Plaintiffs submitted declarations in support of the motion for attorneys' fees indicating that Mr. Dennis P. Wilson performed 86.90 hours of work on the case prior to being substituted as counsel by the R. Rex Parris Law Firm. His billing rate is $450 per hour. Mr. Anthony Luti expended 53.40 hours on the case at a rate of $400 per hour. While the declarations offered by counsel have been considered, they were not referenced or discussed in the motion for attorneys' fees. The Court presumes these declarations were submitted as support for Class Counsel's request for a 33 percent-of-the-benefit award; because these declarations were not addressed in the motion for attorneys' fees, they were not expressly factored above as part of the lodestar cross-check. (*See* Doc. 61.)

amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 1007, n. 7 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975)); *see also Bond*, 2011 WL 2648879, at *13.

Here, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. There was no guarantee they would recoup their fees or the substantial costs advanced. The contingent nature of the representation has also resulted in Class Counsel litigating this matter for approximately two years without any compensation. Counsel also achieved a good result and generated a significant benefit for the class. Based on the claims rate, 1,053 Class Members will receive a total of $633,814.40 in the aggregate, with an average award of $601.91 each. Twelve Class Members who submitted late claims will be paid a total of $5,199.57, the average payment to each is estimated to be $433.29. (Doc. 69, Dahl Decl., ¶¶ 6-7.) Finally, the percentage award requested in this case is commensurate with the percent-of-the-benefit awards made in other wage and hour actions in this district. *See, e.g., Benitez*, 1:08-cv-1122 LJO GSA (E.D. Cal. Dec. 15, 2009) (33.3%).

Based upon the overall success, the substantial legal risks associated with Plaintiffs' claims and the financial risks borne by Class Counsel, Plaintiff's request for an award of $430,000, necessitating a 1.06 multiplier of the lodestar, is reasonable. *See, e.g., Vizcaino*, 290 F.3d at 1051 (finding no abuse of discretion in awarding a multiplier of 3.65). Based on the absence of opposition from any Class Member, and Class Counsel's well-documented hours worked in this action, the Court approves the attorneys' fees in the total amount of $430,000.

## C.   Costs

The Court also finds that Plaintiffs' request for costs is reasonable. Class Counsel seek a total of $32,722.74 in costs. The declarations of Class Counsel detail the costs incurred, which include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges. (Doc 63-2, Downey Decl., ¶ 9.) These types of costs are routinely reimbursed. *See, e.g., Vasquez*, 266 F.R.D at 493. While the costs are higher than was estimated at the time of settlement ($22,616.30 estimate) (*see* Doc. 47-1, ¶ 7(k)), no opposition to the motion for an

1   award of costs was filed by any Class Member or by Defendant.  Moreover, the Court has reviewed

2   the additional costs and finds they are reasonable.

3   **D.      The Proposed Payment to the Claims Administrator is Reasonable**

4          The $21,930 that Plaintiffs request be approved as payment to the Claims Administrator

5   appears fair and reasonable.  The fee requested here comports with other Claims Administration fees

6   in similar class-action settlements, particularly in light of the number of Notice Packets that the Claims

7   Administrator was required to process.  *See, e.g., Garcia v. Gordon Trucking*, No. 1:10-CV-0324-

8   AWI-SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving $25,000 administrator fee

9   awarded in wage and hour case involving 1,868 potential class members); *Harris v. Vector Marketing

10  Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (awarding $250,000 in

11  administration costs where claims administrator sent out 68,487 notices);  *Vasquez*, 266 F.R.D. at 484

12  (approving $25,000 administrator fee awarded in wage and hour case involving 177 potential class

13  members).  Moreover, the administration fee is less than was estimated at the time of settlement

14  ($25,500 estimate).  (*See* Doc. 47-1, ¶ 7(k).)  The Court finds the requested Claims Administration fee

15  is reasonable, and it shall be awarded.

16  **E.      Enhancement Award to Class Representatives is Reasonable**

17         Pursuant to the Settlement Agreement, the Class Representatives seek enhancement awards in

18  the amount of $5,000 each.  "Courts routinely approve incentive awards to compensate named

19  plaintiffs for the services they provide and the risks they incurred during the course of the class action

20  litigation."  *Garcia*, 2012 WL 5364575, at * 11 (quoting *Ingram v. The Coca-Cola Co.*, 200 F.R.D.

21  685, 694 (N.D. Ga. 2011)).  In *Garcia* the court approved enhancement awards of $15,000 each for the

22  class representatives for their work in assisting Class Counsel in investigation of the case, preparation

23  of the complaint, producing evidentiary documents, providing deposition testimony, responding to

24  discovery requests, and assisting with the settlement.  *Id.*

25         Here, the class representatives filed declarations setting forth their efforts in assisting Class

26  Counsel, which included bringing the claim to the attention of class counsel, searching their files and

27  producing documents related to their employment, explained the employment practices of Defendant,

28  and gave several extensive interviews concerning their experiences.  (Doc. 63:21:20-22:7; Doc. 63-4,

Barbosa Decl., ¶¶ 4-8; Doc. 63-5, Barrios Decl., ¶¶ 6-11.)   The Court finds, therefore, that the incentive awards in the amount of $5,000 requested for each of the two class representatives are reasonable.

## V.   CONCLUSION AND ORDER

Based on consideration of the memorandums, declarations, and exhibits filed in support of the present motions, IT IS HEREBY ORDERED that:

1.   The Joint Motion for Final Approval of the Class Action Settlement is GRANTED, subject to the following findings and orders:

    a.   The Court finds that the Settlement is fair, adequate and reasonable as to all potential Class Members, when balanced against the probable outcome of further litigation.   At the time the Settlement was negotiated, counsel for the parties were reasonably able to evaluate their respective positions.   This Settlement will avoid substantial additional costs to all parties, as well as the delay and risks that would be presented by further prosecution of the action.

    b.   Unless defined herein, all defined terms in this Order shall have the respective meanings as the same terms in the Stipulation of Class Settlement and Release Between Plaintiffs and Defendant ("Settlement Agreement") (Doc. 48);

    c.   Pursuant to Federal Rule of Civil Procedure 23, and for settlement purposes only, the Court certifies the proposed Settlement Class, consisting of all current and former hourly production and support employees of Defendant's meat packing facility in Fresno, California, between February 2, 2009, and January 16, 2013, who did not timely opt-out of this Settlement;

    d.   For settlement purpose only, Settlement Class Counsel are:

        i.   Alexander R. Wheeler, Esq. and Kitty Szeto, Esq. of the R. Rex Parris Law Firm, 43364 10th Street West, Lancaster, California 93534; and

        ii.   Philip A. Downey, Esq., The Downey Law Firm, LLC, P.O. Box 1021, Unionville, Pennsylvania, 19375.

    e.   Dahl Administration, LLC is APPROVED as the Settlement Claims

1         Administrator;

2     f.     The Court APPROVES Plaintiffs' Motion for Final Approval of Attorneys'

3         Fees, Costs, and Enhancement Award and finds that the amounts requested by

4         Plaintiffs' Counsel are fair and reasonable.  Settlement Class Counsel as

5         identified above shall receive as their fee $430,000 and shall receive

6         reimbursement of $32,722.74 in expenses in prosecuting this litigation.  These

7         amounts shall be paid to Settlement Class Counsel in accordance with the

8         Settlement Agreement;

9     g.     The remainder of the Gross Settlement Amount that Defendant deposited with

10        the Claims Administrator shall be distributed in accordance with the provisions

11        set forth in the parties' Settlement Agreement;

12     h.     The Court APPROVES the service awards of $5,000 to Christina Barbosa and

13        $5,000 to Patricia Aguilera Barrios.  The Court finds that this amount is fair and

14        reasonable in light of Plaintiffs' contribution to the litigation, for the notoriety

15        and risk of serving as representatives for the class, and for providing Defendant

16        a general release of claims;

17     i.     The Court APPROVES payment of $21,930 to Dahl Administration, LLC, the

18        appointed Settlement Claims Administrator;

19     j.     In approving this Settlement and the Plaintiffs' fee and cost application, the

20        Court notes there is no reversion to Defendant of any part of the Gross

21        Settlement Fund.  The Court APPROVES the selection of The United Way of

22        Fresno County as the *cy pres* beneficiary.  The Claims Administrator shall

23        donate to this beneficiary according to the conditions set out in the Settlement

24        Agreement.  Any portions of the Net Settlement Amount that is not claimed by

25        Class Members shall be paid to *cy pres* recipient, The United Way of Fresno

26        County;

27     k.     On January 16, 2013, in accordance with the Court's order granting preliminary

28        approval of the Settlement, the Court-approved Class Notice, in both the

English and Spanish language, was provided via U.S. First-class mail to 1,837 Class Members.  Class Notices returned as undeliverable with forwarding addresses were re-mailed to Class Members, while Class Notices that were returned as undeliverable without a forwarding address were further researched and address traces were performed.  For updated addresses obtained by way of the address traces, Class Notices were promptly mailed to the new addresses.  Consistent with the Settlement Agreement, no further processing was performed for those Class Notices that were returned as undeliverable.  The Court finds that the plan for giving notice, in form, method, and content, as well as the execution of giving such notice by the Parties and Settlement Administrator, has fully complied with the requirements of Rule 23, due process, and this Court's Order granting preliminary approval.  In response to the Class Notice, only one Class Member excluded herself from the Settlement, no Class Members objected to the Settlement terms, and no Class Members disputed the number of weeks worked or the approximate Settlement Award noted in the Class Notice;

*l.*     As provided in the "RELEASED CLAIMS" Section of the Settlement Agreement, each member of the Settlement Class, except for the one individual who opted out of the Settlement, fully releases and discharges Defendant as set forth in the Settlement Agreement (Doc. 48).  Each such Settlement Class member shall not be entitled to pursue, accept, or recover damages for any Released Claims against the Released Parties arising between February 1, 2009, and January 16, 2013, other than what is provided for in the Settlement Agreement.  Notwithstanding this Release of Claims, waivers of claims expressly under the FLSA shall only be binding on the Settlement Class members who opted-in;

2.     The Court retains jurisdiction over the parties to enforce the terms of the Order and Judgment, and shall have continuing jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement, the Preliminary

35

1    Approval Order, this Order, and the distribution of all settlement payments;

2    3.    **Within 120 days from the date of this order**, Class Counsel shall file proof of

3    payments made by the Settlement Administrator and a list of all persons who have

4    cashed a Settlement Award Check; and

5    4.    After proof of payments has been filed, **and within 180 days from the date of this**

6    **Order**, the parties shall file a proposed Final Judgment and Dismissal with Prejudice

7    for entry by the Court.

IT IS SO ORDERED.

Dated:   __**July 1, 2013**__                    _____**/s/ Sheila K. Oberto**_____
                                                UNITED STATES MAGISTRATE JUDGE